**LARRIMORE & FARNISH, L.L.P.**
**BY: DALE G. LARRIMORE, ESQUIRE**
I.D. No: 23243
1800 JOHN F. KENNEDY BLVD, SUITE 404
PHILADELPHIA, PA 19103
(215) 209-8500

**ATTORNEY FOR PLAINTIFF**

---

| | |
|---|---|
| **REGINA HOLLENBACH**<br>26 East 7th Street<br>Lansdale, PA 19446<br><br>vs.<br><br>**AMERICAN AIRLINES, INC.**<br>c/o C/T Corporation Systems - Philadelphia<br>Two Commerce Square<br>2001 Market Street, 5th Floor<br>Philadelphia, Pennsylvania 19103 | **UNITED STATES DISTRICT COURT**<br>**EASTERN DISTRICT OF PENNSYLVANIA**<br><br><br>**NO:**<br><br><br>**JURY TRIAL DEMANDED** |

## CIVIL ACTION

1.      Plaintiff **REGINA HOLLENBACH** is a citizen of the Commonwealth of

Pennsylvania, domiciled therein at 26 East 7th Street, Lansdale, PA 19446.

2.      Defendant **AMERICAN AIRLINES, INC.,** ("American Airlines") is a corporation

organized and existing under and by virtue of the laws of the State of Delaware, with its principal

place of business located in the State of Texas.

3.      This Honorable Court has subject matter jurisdiction for this litigation based upon

diversity of citizenship with an amount in controversy being in excess of Seventy-Five Thousand

($75,000) Dollars, in accordance with 28 U.S.C. §1332.

4.      Defendant American Airlines is registered to do business under the laws of the

Commonwealth of Pennsylvania as a registered Foreign Business Corporation, with a registered

address in Pennsylvania c/o CT Corporation System - Philadelphia.

5.      Under the Pennsylvania long-arm statute, 42 Pa.C.S. §5301, qualification to do business under the laws of Pennsylvania "shall constitute a sufficient basis for jurisdiction to enable the tribunals of this Commonwealth to exercise general personal jurisdiction" over such foreign corporation.[1]

6.      By registering to do business in Pennsylvania, this Honorable Court may constitutionally exercise *in personam* jurisdiction over defendant American Airlines.[2]

7      All of the acts alleged herein to have been done or not to have been done by the defendant American Airlines, were done or not done by said defendant, through its employees, agents, servants, workmen and/or contractors working pursuant to a contract with defendant, all of whom were acting in the course and scope of their employment, agency, or contract with and on behalf of said defendant.

8.      At all times relevant to this litigation, defendant American Airlines was operating as a common-carrier commercial airline, with international and domestic flights throughout the world, including flights into and out of the Philadelphia International Airport.

9.      At all times relevant to this litigation, defendant American Airlines maintained an office in Philadelphia at the Philadelphia International Airport, at 8500 Essington Avenue, Suite A1, Philadelphia, PA 19153.

_____

[1] 42 Pa.C.S. §5301(a)(2).

[2] *Bane v. Netlink, Inc.*, 925 F.2d 637, 640-41 (3d Cir. 1991); *Bors v. Johnson & Johnson*, 208 F.Supp. 3d 648 (E.D. Pa. 2016); *Hegna v. Smitty's Supply, Inc.*, 2017 U.S. Dist. LEXIS 90367, 2017 WL 2563231 (E.D. Pa. 2017).

10.     On July 21, 2016, defendant American Airlines operated Flight AA #1822, a scheduled flight between Palm Beach International Airport ("PBI") and the Philadelphia International Airport ("PHL").

11.     On a date prior to July 14, 2016, the plaintiff had purchased a round trip ticket (AA Record Locator PIDXBK; ticket number 0017844581571) to fly on American Airlines from PHL to PBI on Flight # AA 1680 on July 14, 2016, returning from PBI to PHL on Flight # AA 1822 ("Flight #1822) on July 21, 2016, with a scheduled departure time of 2:15 PM.

12.     On July 21, 2016, defendant American Airlines was the owner of an Airbus Industrie A320-214 airplane, manufactured in 1999, with registration number N108UW, that was scheduled to be used for Flight #1822 from PBI to PHL on July 21, 2016.

13.     Plaintiff boarded Flight #1822 on July 21, 2016 at PBI and she sat in her assigned seat in the Airbus Industrie A320-214 airplane.

14.     At all material times, after boarding the plane, the plaintiff was a business invitee lawfully on American Airlines Flight #1822, with a contract for carriage with defendant.

15.     At all material times, defendant American Airlines was a common carrier and it had a duty to exercise the highest degree of care, foresight, prudence and diligence reasonably demanded at any given time by the conditions and circumstances then affecting the passenger and the carrier during the contract of carriage.

16.     At all material times, under Federal laws and regulations, defendant American Airlines had a duty to provide service with the highest degree of safety.

17.     On July 21, 2016, the American Airlines Flight #1822 pulled away from the gate and entered onto the taxiway to PBI runway 10, for clearance for takeoff.

18.     On the date aforesaid, at about 3:00 PM, while taxiing to runway 10, the passengers and crew on Flight #1822 heard unusual noises and began to detect a noxious odor.

19.     Soon thereafter, the pilot of JetBlue #154, behind American Flight #1822 on the taxiway, reported to the PBI tower that "we see fluid coming out of American."

20.     After detecting this odor, Kenneth Chapline, the pilot of Flight #1822 ordered the immediate evacuation of the plane onto the tarmac, using the Airbus A320's inflatable slides.

21.     Three airplane doors were opened, emergency chutes were deployed and passengers on Flight #1822 were told to jump out the doors and slide down the chutes to the ground.

22.     133 passengers and five crew members evacuated the aircraft onto the tarmac.

23.     In the process of evacuating the plane and sliding down the inflatable emergency exit chute, the plaintiff sustained serious personal injuries as are hereinafter more particularly described.

24.     The aforesaid incident and the injuries sustained by the plaintiff were in no manner due to any act or failure to act on behalf of the plaintiff.

25.     The harms and losses sustained by the plaintiff were proximately caused by the negligence and carelessness of the defendant, its agents, servants, and/or employees, including the following acts or omissions:

      25.1    Allowing passengers to board Flight #1822 and pull away from the gate in a plane that was not airworthy;

      25.2    Allowing passengers to board Flight #1822 and pull away from the gate in a plane that was in an unreasonably dangerous condition, due to the presence of a hydraulic leak from a green system hydraulic line that had chafed through;

25.3    Failing to maintain this Airbus Industrie A320-214 airplane in a reasonably safe condition for carrying passengers;

25.4    Failing to properly repair and maintain this Airbus Industrie A320-214 airplane, when the aircraft logbook revealed that an inbound pilot had reported fluid leaking out of the wheel well area;

25.5    Knowing of a fluid leak for this Airbus Industrie A320-214 airplane prior to boarding the plane, and yet failing to take the time and precautions necessary to ensure that the leak was located and properly repaired, evidencing a careless, reckless and wanton disregard for the safety of the passengers;

25.6    Failing to maintain this Airbus Industrie A320-214 airplane in accordance with manufacturer specifications, instructions and/or technical service bulletins;

25.7    Failing to properly inspect this Flight #1822 plane before allowing passengers to board the plane and before allowing the plane to leave the gate;

25.8    Failing to realize that there was a dangerous and/or unsafe condition with this Airbus Industrie AF-320-214 airplane before allowing passengers to board the plane and before allowing the plane to leave the gate;

25.9    Failing to ensure that Airbus Industrie AF-320-214 airplane was airworthy before allowing passengers to board the plane and before allowing the plane to leave the gate;

25.10   Violating applicable Federal Aviation Authority guidelines and regulations or other federal statutes or codes provisions;

25.11   Failing to properly coordinate the emergency evacuation of Flight #1822 with the onboard crew;

25.12   Creating a panic inside this Flight #1822 airplane in the manner by which the evacuation was communicated to the passengers;

25.13   Failing to properly instruct the passengers in the safe method for utilizing the inflatable evacuation chutes, including but not limited to failing to warn or instruct passengers on the method for safe sliding down the evacuation chutes;

25.14   Failing to properly train the flight attendants and crew regarding emergency situations and emergency evacuation situations, and, specifically, on how to instruct and warn passengers in the proper and safe method for utilizing the inflatable evacuation chutes;

25.15   Failing to properly manage, direct and/or ensure that the crew of Flight #1822 followed the proper procedures and protocols for an emergency evacuation of this airplane;

25.16   Failing to properly train its employees, agents, contractors, or anyone with responsibility for inspection and maintenance of the Airbus Industrie AF-320-215 planes in its inventory, so that Green System and other hydraulic lines would not chafe through and cause a need for emergency evacuation of a plane such as happened here, on July 21, 2016, at Palm Beach International airport; and

25.17   Failing to use reasonable prudence and care to provide for the safety of its business invitees to whom the defendant owed the highest duty of care.

26.     Solely by reason of the aforesaid, plaintiff Regina Hollenbach sustained serious injuries to various parts of her body including, a full-thickness tear of the supraspinatus tendon; tendinopathy of the long head of the biceps tendon; and a severely torn rotator cuff in the right shoulder, as well as other injuries to her body, shoulders and extremities and a severe shock to her nerves, muscles, ligaments and tendons, some or all of which are of a serious and permanent nature and which have caused plaintiff and will continue to cause plaintiff great pain and agony, and also prevented plaintiff and probably will in the future prevent plaintiff from attending to her daily duties, occupation, activities and pleasures, all to her great detriment and loss.

27.     As a further result of the aforesaid, the plaintiff has been obliged to receive and undergo medical attention and care and has had to incur various expenses in an attempt to treat, cure and rehabilitate herself from said injuries, including shoulder surgery for rotator cuff repair,

debridement, and biceps tenotomy on January 13, 2017, which was only partially successful because of the severity of the injury to the supraspinatus tendon or muscle, and plaintiff may be obliged to continue to expend such sums or incur such expenditures for an indefinite period of time in the future, all to her great financial detriment and loss.

28.    As a further result of the aforesaid, the plaintiff has suffered a loss of earnings and a diminution of her earning capacity, all to her great financial detriment and loss.

29.    As a further result of the aforesaid, the plaintiff has suffered severe physical pain, mental anguish, humiliation and loss of enjoyment of life, and life's pleasures and plaintiff may continue to suffer same for an indefinite period of time in the future.

**WHEREFORE**, plaintiff demands damages from the defendant in the amount of Four Hundred and Twenty-five Thousand Dollars ($425,000), an amount in excess of the jurisdictional limit for arbitration in the Eastern District of Pennsylvania.

LARRIMORE & FARNISH, L.L.P.

BY: _____
DALE G. LARRIMORE, ESQUIRE
ATTORNEY FOR PLAINTIFF

Date: 4/30/2018

## JURY DEMAND

Plaintiffs demand a trial by Jury in this action.

**LARRIMORE & FARNISH, L.L.P.**

BY: _____

**DALE G. LARRIMORE, ESQUIRE**
**ATTORNEY FOR PLAINTIFF**

Date: 4/30/2018